Fourth case this morning, Piltch v. Ford Motor Company. Mr. Werther? It's been a long morning. It's even better when it's magnified. Good morning, Your Honors, and to my distinguished colleagues representing Ford. I'm here on behalf of Mr. and Mrs. Piltch. I'm Don Wertheimer. My office is in South Bend. This appeal, in one sense, is relatively simple, and this is why. The summary judgment record sets forth the following facts, which are basically undisputed. The Piltch's bought their Mercury Mountaineer in 2003. They had an accident in 2006 near Andover, Massachusetts. The car was repaired. They had another accident in February of 2007, also in the Andover, Massachusetts, area. There was black ice. The Mercury Mountaineer slammed into a brick wall. I believe there's a cemetery. Went back across the road and went down an incline and crashed into several trees. So that was the much more severe frontal impact when it fell down the vehicle and struck the trees. Both Piltches were rendered unconscious. Mr. Piltch had some fractured vertebras. Mrs. Piltch had some medical problems with memory loss. And the airbags completely failed to deploy in that February of 2007 accident. Now, the issue is not whether there is a material fact dispute so that we go forward to trial. The issue is whether the facts as presented are sufficient enough to go forward to present those facts to a jury. And they should be. Ford, in its brief, has made a number of contentions, all of which are distinguished in the Piltch's brief. But I want to hit on some of those. First of all, after the 2006 accident, there's some contention that Mr. Piltch engaged in hearsay testimony as well as in his verified statement about resetting everything. It was my understanding that Woodbury Motors reset it. That is my understanding. What kind of statement did you say he made? He testified in his deposition and also in his verified statement opposing the summary judgment motion about what was done after the 2006 accident, which was much less severe. He talks about reset. It's actually on pages 23, line 25. Page 23, line 25, and page 24, lines 1 through 10. That's what it's on. How did you describe those statements? Ford describes those statements as hearsay. They are not. They are not hearsay. That's a belief. That's a state of mind caused by information derived from the manager. That's significant. It sounds like it's true because he believes somebody else told him out of court. It sounds like hearsay. It's a state of mind caused by information. The state of mind is irrelevant. The facts are what's relevant. It is in the record that it was fixed. It was repaired. That should cover everything. Mr. Wertheimer, do you know whether all the airbags, both the passenger and driver side, are connected to the same sensing device to trigger them or do they have separate sensors? I don't know. I do know that none of the airbags deployed at all. Could you respond at some point in your argument, Mr. Wertheimer, to the argument Ford has made about the lack of any evidence of the aggravated injuries since this is, in essence, a crash-worthiness case? Yes, I will absolutely do that, Your Honor. First of all, the summary judgment record is clear that injuries were sustained by the pilches. Ford is contending that. Right. That's not disputed. But you've got to be more discriminating in this kind of a case. Okay. Here is how the pilches will be able to sustain their burden of proof to show without an expert. First of all, under Indiana law, they are entitled to a jury instruction on lowering of quality of life. They are entitled to a jury instruction about a life expectancy on the mortality tables. They are entitled to show, and this is part, I think Ford has conceded this, the substantial medical expenses incurred in the treatment of Mrs. Pilch. And Mr. Pilch's ---- Okay, I understand that. But how does any of that distinguish between the injuries they would have suffered? I know this is hard to do, but that's why the cases seem to indicate that expert testimony is needed. How do they distinguish between the injuries they would have suffered if the versus what actually happened? What they can do is they can show the state of their health before the February of 2007 accident, compare it to their state of health afterwards to show there's a difference. Nobody disputes that they were seriously hurt in the accident. But your claim is that the injuries were much worse than they would have been otherwise. How do you meet that burden? Because the jury can determine that the injuries were more severe. Based on what evidence? Based upon the severity of the crash, the medical expenses incurred, and the care and treatment of the injuries. And, in fact, there's a 2010 Indiana Court of Appeals case entitled Indianapolis Telephone Company versus Spruill at 464 Northeastern 93. The reason I bring that up is that the Court of Appeals specifically found, they called it the Indiana Appellate Court, that the court should take judicial notice of the law of gravity. The point is that a court can take judicial notice. A jury has a lot of common sense. And a jury can understand that if there's a severe impact, the airbags should deploy. And the reason the airbags should be deployed is it lessens the injuries. If the damages are restricted, they are not eliminated because the medical expenses alone are significant. They were wearing seatbelts, correct? Yes. I think that's where the problem comes in. They've been much worse off if they hadn't been wearing seatbelts. The question is, how much worse off were they because of the airbag in combination with the seatbelts? I agree there is no expert testimony on that point. What I'm telling you is that the testimony of the pilches, the before and the after, is sufficient for a jury to make a determination. And if the judge at a trial determines that I'm not going to allow that evidence, the judge will allow the evidence of the medical expenses. The judge will allow the evidence about quality of life and the mortality tables. As I understand it, for example, the force with which the airbags are deployed varied at some point in manufacture from one year to another. How do you avoid having somebody come in and testify? In other words, the force with which the airbag deployed in the year before the accident and the year of the accident and the year afterwards may have been different. They may have been different. There's nothing in the record about that. What is significant, though, is the owner's manual that defines what the airbags are supposed to do, which is part of the summary judgment record. And the deceleration has to be rapid enough so as to trigger the airbags. And again, we talk about the common sense of the jury and that when a car or a vehicle goes down an incline, it's going to go faster when it hits the bottom. So a jury can make that determination that what's the use of the airbags if there's a severe frontal collision and the bags don't deploy? Mr. Wertheimer, if I could just ask you, one of the things that concerns me here, I don't think I've seen a case like this before where the car had been sold and is no longer available to either party. It looks like the delay almost amounts to spoliation of evidence here. I understand that is a concern of Ford, and I understand that that's a legitimate concern. The problem is that the Pilch has sold this vehicle to Mr. Boyle, who happens to be a mechanic, and he issued a verified statement about what happens to black boxes and it was repaired. I understand that's a problem. And as Your Honor may recall, in the brief, there are a number of arguments presented by the Pilch's, including res ipsa loquitur with Judge Posner, author of the Witten case. And what I'm saying is, Your Honor, that the facts as stated are sufficient, even though they could have been better and more complete, to withstand the summary judgment motion. If it had been a low-level crash and the airbags didn't deploy, that's different. But more than 40 miles per hour, and Mr. Pilch at the time of his deposition was 63 years old. He had been a driver for a long time. As a layperson, he can estimate his speed. And when they both lost consciousness and were transported to the hospital, that shows the severity of the collision. Those airbags should have deployed. Counsel, your time has expired. I'll give you a minute for rebuttal. That's fine. If you'll add a minute, it's time to pounce. May it please the Court, Sean Murata on behalf of Ford Motor Company. Let me start with the amount in controversy question that was raised in this Court's November 21st order. As the written submissions show, at the time of removal, Ford was aware, based on allegations from their attorney, that Ms. Nelson Pilch had $250,000 in medical bills. That's enough to satisfy the jurisdictional threshold. But for the aggravated injury question, I would easily agree with you. But the amount in controversy question... Had there been any settlement demand? I'm not aware if there had been a settlement demand at that time. Or in the prior litigation? I'm not aware if there had been a settlement demand as such, Your Honor. But there had certainly been a presentation at the request of the magistrate judge when we were pulling together the initial disclosures that said, you know, tell us what you're claiming in this case. And one of the things that was claimed was $250,000 in medical expenses. Without differentiating? The claim was made without differentiating more specifically between the injuries that would have been suffered if the airbags had deployed versus when they didn't. That's true, Your Honor. Though under removal jurisdiction, the amount in controversy is simply the amount that is alleged in the complaint. And then it would then shift to say, well, it's legally impossible to get more than $75,000. So even though, as we believe in this case, the Pilches can't recover $250,000 in medical bills, the fact that they had alleged it and the fact that it's not legally impossible to get that amount at least puts them over the jurisdictional threshold. The only thing that would be required to address any jurisdictional issue would be an amendment to the notice of removal. But this Court's cases allow that routinely when it's required. Turning then to the merits, I do think that the enhanced injury point is dispositive because my friend on the other side talks about the difference between their health before and after the accident. But Ford, of course, is not liable for all of the Pilches' damages that they suffered in that February crash. They're only liable for the amount, if at all, their damages were enhanced by the failure of the airbags to deploy. And the Pilches have presented no evidence that would compare what their injuries would have been had the airbags deployed and what their injuries would have been because the airbags did not deploy. And, of course, this wasn't an accident where it went straight into a wall. There were multiple spins, multiple collisions, and how those injuries would match up one against the other is simply not within the province of a lay jury to know. I assume you would agree that if the car simply ran head-on into a fixed stone wall and stopped from 40 miles an hour to zero, the airbags should deploy. So in that case, I think there still has to be testimony for the jury to know when airbags are supposed to deploy because it's not within their common knowledge. It doesn't necessarily have to be an expert, though. I mean, if you had subpoenaed a Ford design engineer and given that hypothetical, which the Pilches could have done, they would probably say yes. But, of course, the Pilches didn't do that. And the Pilches didn't subpoena any documents on design specifications of the Mercury Mountaineer from Ford. They didn't do anything like that. Can you answer my question about whether they're all connected to the same sensor or whether they're different ones? Certainly, Your Honor. It's not in the record, but my understanding is that it's a single computer system that decides whether the airbags deploy that's connected to a single master sensor, but there are so-called satellite sensors that are also involved in the system. But it's a single computer that makes the decision whether or not to deploy the airbags. So multiple sensors, master computer. That's correct, Your Honor. In this particular 2003 Mountaineer at least. And Ford did change over time the force with which those airbags deployed, did it not? I don't know that offhand, Your Honor, but, of course, the design specifications change as it goes on. And that's actually a key point about jurors sort of knowing within their lay understanding of when airbags should deploy. Airbags should deploy when they should and shouldn't deploy when they shouldn't because an airbag deploying itself can cause injury. So you can't just sort of know by hearing testimony about an accident which box this case falls in. You need an expert to tell you that, or at least you need some more circumstantial evidence than what the Pilchers had here because they had no circumstantial evidence other than Mr. Pilcher's own description of the accident. And so for that reason, number one, because they have no testimony about when the airbags should deploy, that could be matched up by the jury to Mr. Pilcher's description of the accident. And because the Pilchers have no testimony, that would help distinguish their injuries that were enhanced as a result. And there's another aspect that we don't know, again, from the record, and you had the same response, what the dimension is whether it is a small deployment or a larger deployment of the airbag. We don't, Your Honor, and certainly it's not in the owner's manual and there's been no testimony regarding it. So there's simply no evidence from which a jury can determine whether the Pilchers' injuries have been enhanced by the airbags not deploying or not. And for both of those independent reasons, the district court granted summary judgment to Ford appropriately in this case. Unless the court has further questions, we'd ask that you affirm. Thank you, Counselor. I'm sorry. Did the district court rule on the enhanced injury question? It did not, Your Honor, though we did raise it in our motion for summary judgment and the Pilchers do address in the blue brief. Yeah. First of all, on the issue of liability of Ford, it's significant that the warning lights never triggered any warning to the Pilchers. Secondly, the fact that significant medical expenses were incurred and we don't have what it would have done if the airbags had deployed, still a jury has a lot of common sense and it can be indirectly shown by the Pilchers on their before and after medical condition. I understand Ford's position, but I'm just going to have to rely on the brief and the arguments made, Your Honor. Well, my question to counsel covered a couple of areas which I think may have a bearing on your case. That is the speed of the deployment of the airbags, the dimension in which they are deployed may have changed over time and the jury cannot, I don't think, just of their own knowledge, make that determination. They can in the sense that an airbag is supposed to protect the driver, the passenger, the occupants of the car against severe frontal collisions, setting aside any impacts on the side. And if a jury determines that's a severe frontal collision, they can do that based upon their own common sense and they can determine that going in excess of 40 miles an hour and smacking into some trees should be sufficient or what good are the airbags. Thank you, counsel. Thanks to both counsel. The case is taken under advisement.